UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
:
EDWARD ROYCROFT, individually and on behalf of all     :
others similarly situated,                                              :
:
Plaintiff,                                 :
:
-against-                                 :          18 Civ. 5481 (AKH) (BCM)
:
METLIFE, INC. and METROPOLITAN LIFE                     :
INSURANCE COMPANY,                                      :
:
Defendants.                               :
:
-----------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Maeve O'Connor
Elliot Greenfield
Rachel A. Shanies
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants MetLife, Inc. and
Metropolitan Life Insurance Company*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

TABLE OF DECLARATIONS AND EXHIBITS ..................................................................... v

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

I.      METLIFE, INC. AND METROPOLITAN LIFE INSURANCE COMPANY ................. 3

II.     GROUP ANNUITY CONTRACTS. ................................................................................. 3

III.    MLIC'S IDENTIFICATION AND REMEDIATION OF ISSUES CONCERNING
        GAC PAYMENTS ........................................................................................................... 3

IV.     PLAINTIFF'S ANNUITY BENEFIT. ............................................................................. 5

ARGUMENT ............................................................................................................................. 6

I.      PLAINTIFF FAILS TO STATE A CLAIM AS TO METLIFE, INC. ............................. 6

II.     PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THE SUBJECT
        MATTER OF THE DISPUTE IS GOVERNED BY CONTRACT. ................................. 7

        A.      The Unjust Enrichment Claim Should Be Dismissed. ........................................... 7

        B.      The Restitution and Accounting Claims Should Be Dismissed ........................... 10

III.    PLAINTIFF'S ACCOUNTING CLAIM SHOULD BE DISMISSED BECAUSE
        THERE IS NO CONFIDENTIAL OR FIDUCIARY RELATIONSHIP. ....................... 10

IV.     PLAINTIFF CANNOT PURSUE A CLASS ACTION BECAUSE HE FAILS TO
        STATE AN INDIVIDUAL CLAIM AND HIS CLAIMS ARE TIME BARRED. ......... 12

        A.      Plaintiff Received His Annuity Benefit and Fails to Plead Any Entitlement
                to Interest Payments. ........................................................................................... 12

        B.      The Named Plaintiff's Claims Are Time Barred. ................................................ 13

CONCLUSION ........................................................................................................................ 15

**TABLE OF AUTHORITIES**

CASES

*Adelaide Prods., Inc. v. BKN Int'l AG,*
    834 N.Y.S.2d 3 (N.Y. App. Div. 1st Dep't 2007) ........................................7

*AGF York 57 L.P. v. Glikman,*
    897 N.Y.S.2d 668 (N.Y. Sup. Ct. 2009) ....................................................10

*Batson v. RIM San Antonio Acquisition, LLC,*
    No. 15 Civ. 7576, 2018 WL 1581675 (S.D.N.Y. Mar. 27, 2018) ...........8

*Bezuszka v. L.A. Models, Inc.,*
    No. 04 Civ. 7703, 2006 WL 770526 (S.D.N.Y. Mar. 24, 2006) ...........14

*Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.,*
    355 F. App'x 516 (2d Cir. 2009) ...............................................................7

*Castellotti v. Free,*
    138 A.D.3d 198 (N. Y. App. Div. 1st Dep't 2016).................................11

*Cohen v. S.A.C. Trading Corp.,*
    711 F.3d 353 (2d Cir. 2013)......................................................................14

*Colavito v. N.Y. Organ Donor Network, Inc.,*
    860 N.E.2d 713 (N.Y. 2006)......................................................................15

*Concord Assocs., L.P. v. Entm't Props. Trust,*
    No. 12 Civ. 1667, 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014)...........6

*Corsello v. Verizon N.Y., Inc.,*
    967 N.E.2d 1177 (N.Y. 2012)...................................................................10

*Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.,*
    556 N.E.2d 1093 (N.Y. 1990)....................................................................9

*EBC I, Inc. v. Goldman, Sachs & Co.,*
    832 N.E.2d 26 (N.Y. 2005).....................................................................7, 9

*Encore Lake Grove Homeowners Ass'n, Inc. v. Cashin Assocs., P.C.,*
    976 N.Y.S.2d 143 (N.Y. App. Div. 2nd Dep't 2013) .............................9

*Estate of Calderwood v. ACE Grp. Int'l LLC,*
    157 A.D.3d 190 (N.Y. App. Div. 1st Dep't 2017)..................................11

*Goldberger v. Bear, Stearns & Co.,*
    No. 98 Civ. 8677, 2000 WL 1886605 (S.D.N.Y. Dec. 28, 2000).........12

*Gunther v. Capital One, N.A.*,
    703 F. Supp. 2d 264 (E.D.N.Y. 2010) ...................................................................6

*Hanna v. Prudential Ins. Co. of Am.*,
    No. 05-cv-25732, 2005 WL 1755186 (E.D.N.Y. July 26, 2005)............................13

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011)....................................................................6

*In re First Cent. Fin. Corp.*,
    377 F.3d 209 (2d Cir. 2004)..................................................................................10

*In re Initial Pub. Offering Sec. Litig.*,
    214 F.R.D. 117 (S.D.N.Y. 2002) ...........................................................................12

*In re Ply Gem Holdings, Inc. Sec. Litig.*,
    135 F. Supp. 3d 145 (S.D.N.Y. 2015)....................................................................3

*Kapernekas v. Brandhorst*,
    638 F. Supp. 2d 426 (S.D.N.Y. 2009)..................................................................14

*LuxSoma LLC v. Leg Res., Inc.*,
    289 F. Supp. 3d 514 (S.D.N.Y. 2018)..................................................................7, 8

*Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*,
    52 F. Supp. 3d 601 (S.D.N.Y. 2014)....................................................................8, 9

*Marketxt Holdings Corp. v. Engel & Reiman, P.C.*,
    693 F. Supp. 2d 387 (S.D.N.Y. 2010)..................................................................14

*Metropolitan Life Insurance Co. v. Office of State Comptroller*,
    508 N.Y.S.2d 307 (N.Y. App. Div. 3rd Dep't 1986)...........................................13

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
    225 F. Supp. 3d 201 (S.D.N.Y. 2016)....................................................................9

*Nasso v. Bio Reference Labs., Inc.*,
    892 F. Supp. 2d 439 (E.D.N.Y. 2012) ...................................................................9

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)...................................................................................3

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)....................................................................................13

*Parrott v. Logos Capital Mgmt., LLC*,
    936 N.Y.S.2d 194 (N.Y. App. Div. 1st Dep't 2012) ............................................7

*Phillips v. Am. Int'l Grp., Inc.*,
    498 F. Supp. 2d 690 (S.D.N.Y. 2007)..................................................................11

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*,
    449 F. App'x 57 (2d Cir. 2011) ................................................................7, 10

*Rochester Radiology Assocs., P.C. v. Aetna Life Ins. Co.*,
    616 F. Supp. 985 (W.D.N.Y. 1985) ....................................................................11

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)...............................................................................3

*Samuels v. Greenberg*,
    No. 14-cv-4401, 2015 WL 5657565 (E.D.N.Y. Sept. 23, 2015) ...........................14

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996).................................................................................3

*SmartStream Techs., Inc. v. Chambadal*,
    No. 17 Civ. 2459, 2018 WL 1870488 (S.D.N.Y. Apr. 16, 2018) ...........................10

*State of N.Y. v. SCA Servs., Inc.*,
    761 F. Supp. 14 (S.D.N.Y. 1991) ......................................................................10

*Weinstein v. Natalie Weinstein Design Assocs., Inc.*,
    928 N.Y.S.2d 305 (N.Y. App. Div. 2nd Dep't 2011) ............................................11

*Wiseman v. ING Groep, N.V.*,
    No. 16 Civ. 7587, 2017 WL 4712417 (S.D.N.Y. Sept. 28, 2017) ...........................6

*Woodhams v. Allstate Fire & Cas. Co.*,
    748 F. Supp. 2d 211 (S.D.N.Y. 2010)................................................................11

STATUTES

N.Y. Ins. Law § 3214(c) ...........................................................................................13

## <u>TABLE OF DECLARATIONS AND EXHIBITS</u>

- Declaration of Elliot Greenfield in Support of the Defendants' Motion to Dismiss and Accompanying Exhibits:

    o   Exhibit A – MetLife, Inc.'s Form 8-K, filed on December 15, 2017

    o   Exhibit B – Transcript of MetLife, Inc.'s Fourth Quarter 2017 Earnings Release Conference Call

    o   Exhibit C – Letter dated October 12, 2012 addressed to Plaintiff from Metropolitan Life Insurance Company

    o   Exhibit D – Letter dated December 7, 2012 and Benefit Election form bearing Plaintiff's signature dated December 14, 2012

Defendants Metropolitan Life Insurance Company ("MLIC") and MetLife, Inc. submit this memorandum in support of their motion to dismiss the Amended Complaint (Dkt. No. 23, the "AC") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

In late 2017, MLIC reported an issue relating to the payment of group annuity benefits to certain individuals who had not responded to outreach efforts – an issue for which the company expressed deep regret and for which it is implementing aggressive remedial measures.

Specifically, MLIC determined that its efforts to contact individuals who might be eligible for retirement benefits under an annuity product known as a group annuity contract, or "GAC," were inadequate.  When certain group annuitants did not respond to letters sent by MLIC, the company did not take additional steps to locate or contact them, and instead presumed that those individuals would never respond and had not become entitled to benefits.  Many of the GACs at issue were entered into decades ago, and MLIC's processes for tracking annuitants had not taken advantage of technological advances during the intervening years.

MLIC self-reported this issue in December 2017 and announced that it was reviewing and enhancing the processes used to locate and contact group annuitants, including through the use of additional mailings, certified mailings, phone calls and third-party firms specializing in locating unresponsive participants using computer databases.  CEO Steven Kandarian acknowledged that the company "had an operational failure that never should have happened," and MLIC committed itself to finding and paying any group annuitants who were due benefits, including interest on any retroactive payments.  Those efforts are underway.

MLIC has acknowledged its missteps and is working aggressively to remedy them. Plaintiff, however, was never one of the unresponsive annuitants whose torch he seeks to carry. Unlike the annuitants described above, Plaintiff responded to MLIC's letter notifying him of his

eligibility to receive retirement benefits, agreed to receive a lump-sum payment for his annuity benefit and was paid back in 2013.  All three of Plaintiff's claims – unjust enrichment, accounting and restitution – are fundamentally flawed and should be dismissed for multiple reasons.

*First*, each claim against MetLife, Inc. should be dismissed because Plaintiff does not allege any misconduct by MetLife, Inc. – a holding company – and instead relies solely on MetLife, Inc.'s status as the parent company of MLIC.

*Second*, under New York law, Plaintiff cannot assert a claim for unjust enrichment and cannot seek equitable remedies such as restitution and accounting because the subject matter of the dispute is governed by contract: the relevant GAC.

*Third*, Plaintiff's claim for an accounting fails because neither MetLife, Inc. nor MLIC had a confidential or fiduciary relationship with him, as required by New York law.

*Fourth*, Plaintiff fails to state a claim because he received and accepted a lump-sum payment for his contractual annuity benefit and alleges no facts indicating he is entitled to any additional payment.  Plaintiff's claims are also time barred, as he alleges that the wrongful conduct giving rise to his claim for restitution occurred in 1999, when he retired but did not receive benefits.

The Court should dismiss the Amended Complaint in its entirety.

## STATEMENT OF FACTS[1]

### I.    METLIFE, INC. AND METROPOLITAN LIFE INSURANCE COMPANY.

MetLife, Inc. is a public holding company.  (AC ¶ 24.)  Its common stock trades on the New York Stock exchange under the ticker symbol "MET."  (*Id.*)

MLIC is a wholly owned subsidiary of MetLife, Inc.  (*Id.* ¶ 25.)  MLIC is a leading provider of annuities, including GACs.  (*Id.* ¶ 26.)  According to the Amended Complaint, as of 2009, MLIC provided benefit payments to over 600,000 annuitants every month.  (*Id.*)

### II.   GROUP ANNUITY CONTRACTS.

A group annuity contract, or GAC, is "a type of contract issued by an insurance company to a tax-qualified retirement plan which guarantees benefits to the employees covered under the contract, known as 'Annuitants,'  for life or a set period of time, depending on the type of annuity."  (*Id.* ¶ 1.)  Under the terms of a GAC, an insurer "assumes complete responsibility for payment of the benefits to retirees."  (*Id.* ¶ 33.)

### III.  MLIC'S IDENTIFICATION AND REMEDIATION OF ISSUES CONCERNING GAC PAYMENTS.

On December 15, 2017, MetLife, Inc. issued a Form 8-K, stating that "we are improving the process used to locate a small subset of our total group annuitant population of approximately 600,000 that have moved jobs, relocated, or otherwise can no longer be reached via the

---

[1]    The factual allegations in the Complaint are taken as true solely for purposes of this motion, except where those allegations contradict other documents cited in the Amended Complaint.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 n.1 (2d Cir. 2012) (court need not accept as true allegations contradicted by cited documents).  On a motion to dismiss, the Court may take notice of the full content of documents cited in the Amended Complaint, including the earnings call transcripts.  *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996); *In re Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145, 153 n.4 (S.D.N.Y. 2015).  The Court may also consider materials integral to the Amended Complaint even if they are not explicitly incorporated by reference therein.  *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).  Copies of such relevant documents are attached as exhibits to the accompanying Declaration of Elliot Greenfield ("Greenfield Decl.").

information provided for them."[2]  (AC ¶ 56; Greenfield Decl. Ex. A at 3.)  MLIC's outreach efforts previously consisted of sending two letters to group annuitants informing them that they might be eligible for benefits – one as they approached 65 years old and one when they approached 70½ years old.  (AC ¶¶ 50, 66.)  With respect to the scope of the issue, the Form 8-K stated that "[w]e currently believe the portion of the subset that is most impacted is less than 5% of our total group annuitant population and they tend to be smaller size cases with average benefits of less than $150 per month."  (AC ¶ 56; Greenfield Decl. Ex. A at 3.)  MetLife, Inc. further stated, "We are making our process more robust to include a wider set of search techniques and better utilize available technology."  (Greenfield Decl. Ex. A at 3.)

On a February 14, 2018 earnings call, CEO Steven Kandarian addressed the issue directly:  "Simply put, this is not our finest hour.  We had an operational failure that never should have happened and it is deeply embarrassing.  We are undertaking a thorough review of our practices, processes and people to understand where we fell short and how we can reset the bar at the high level people have come to expect from us over our 150-year history."  (AC ¶ 64; Greenfield Decl. Ex. B at 2.)

As Kandarian described, it became clear that "what had been standard protocol for finding retirees who were owed benefits was no longer sufficient."  (Greenfield Decl. Ex. B at 2.)  Accordingly, "we have taken steps to strengthen our processes for finding unresponsive and missing annuitants," including "additional mailings, certified mailings, phone calls and the use of additional third-party firms specializing in locating missing participants."  (*Id.* at 3.)  For all annuitants who were found, MLIC promised to "commence payments as soon as they elect to start their benefits" and to voluntarily "pay interest on back payments."  (*Id.*)

---

[2]  MetLife, Inc. reports its financials on a consolidated basis.  In its SEC filings, the terms "MetLife," the "Company," "we" and "our" refer to "MetLife, Inc., a Delaware corporation incorporated in 1999, its subsidiaries and affiliates."  (*See*, *e.g.*, Greenfield Decl. Ex. A at 3.)

## IV.   PLAINTIFF'S ANNUITY BENEFIT.

Unlike the unresponsive annuitants described above, Plaintiff was in contact with MLIC and received the annuity benefit due to him more than five years before filing this lawsuit.

Plaintiff alleges that he retired in April 1999, in his mid-fifties, and that he was owed retirement benefits under a GAC at that time.  (AC ¶ 76.)  Plaintiff does not allege that he (or anyone else) notified MLIC of his retirement, however, and he alleges elsewhere that "the initiation of payment of benefits pursuant to the GACs [was] tied to Annuitants' birthdays at the age of 65, unless [MLIC] was notified that the Annuitant had opted for an early or late retirement."  (*Id.* ¶ 47.)

Plaintiff alleges that MLIC generally sent letters to annuitants as they approached ages 65 and 70½.  (*Id.* ¶¶ 50, 66.)  In a letter to Plaintiff dated October 12, 2012, MLIC states that, according to its records, Plaintiff had reached age 70 and might be eligible for a retirement benefit under a GAC with his former employer.  (Greenfield Decl. Ex. C.)  The letter requested that he call MLIC's customer service department so that MLIC could provide him with the appropriate retirement package.  (*Id.*)  Apparently in response to that letter, Plaintiff called MLIC to inquire about his annuity benefit.  (AC ¶ 78.)  By letter dated December 7, 2012, MLIC thanked him for calling and enclosed a Benefit Election form, which Plaintiff completed and returned.  (Greenfield Decl. Ex. D.)  In January 2013, MLIC sent him a check for $2,508.36, reflecting the "cash settlement value" of his annuity less federal income tax withholding.  (AC ¶ 79.)  Plaintiff does not contend that the "cash settlement value" is incorrect or that it was inappropriate to withhold a portion for federal income taxes.  Plaintiff deposited the check.  (*Id.*)

Although the alleged misconduct on which Plaintiff bases his claims is the alleged failure to pay benefits to unresponsive annuitants, Plaintiff was not unresponsive.  Upon reaching the age of 70, he agreed to receive a lump sum "Cash Settlement," his benefit was paid to him, and

he agreed that no further benefits were payable under the GAC.  Plaintiff does not allege any facts indicating otherwise.

## ARGUMENT

## I.     PLAINTIFF FAILS TO STATE A CLAIM AS TO METLIFE, INC.

The claims against MetLife, Inc. should be dismissed because Plaintiff does not allege that MetLife, Inc. engaged in any wrongful conduct and instead relies solely on its status as the parent company of MLIC.  As Plaintiff acknowledges, MetLife, Inc. is a public holding company, and it was MLIC – not MetLife, Inc. – that offered GACs.  (AC ¶¶ 24-26.)  Plaintiff does not – and cannot – allege that MetLife, Inc. ever entered into GACs or administered GACs.  MetLife, Inc.'s ownership of MLIC, by itself, is not a basis to impose liability.  (*Id.* ¶ 24.)  *See Wiseman v. ING Groep, N.V.*, No. 16 Civ. 7587, 2017 WL 4712417, at *12 (S.D.N.Y. Sept. 28, 2017) ("[L]iability is never imposed solely upon the fact that a parent owns a controlling interest in the shares of a subsidiary."); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 418 (S.D.N.Y. 2011) (finding that liability may not "be imposed merely based on a parent's ownership of a controlling interest in the subsidiary").

Nor can Plaintiff state a claim against MetLife, Inc. merely by lumping the two defendants together and referring to them collectively as "MetLife."  (AC ¶¶ 1, 27.)  Such "[g]roup pleading, by which allegations are made against families of affiliated entities[,] is simply insufficient to withstand review on a motion to dismiss."  *Concord Assocs., L.P. v. Entm't Props. Trust*, No. 12 Civ. 1667, 2014 WL 1396524, at *24 (S.D.N.Y. Apr. 9, 2014); *see also In re Digital Music*, 812 F. Supp. 2d at 417 (holding that "generic references to 'defendants'" were "insufficient" to state a claim against a parent company); *Gunther v. Capital One, N.A.,* 703 F. Supp. 2d 264, 277 (E.D.N.Y. 2010) (dismissing claim against parent corporation where the

complaint merely referenced "Defendants" collectively, asserted that the parent controlled its

subsidiary and otherwise left the parent "almost entirely out of the story").

## II.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THE SUBJECT MATTER OF THE DISPUTE IS GOVERNED BY CONTRACT.

### A.   The Unjust Enrichment Claim Should Be Dismissed.

Plaintiff's unjust enrichment claim should be dismissed because a valid contract – the

relevant GAC – governs the subject matter of the dispute.  "Under New York law, when a valid

agreement governs the subject matter of a dispute between parties, claims arising from that

dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other

torts, as well as unjust enrichment, . . . are generally precluded, unless based on a duty

independent of the contract."  *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F.

App'x 57, 59 (2d Cir. 2011) (citing cases); *see also Boccardi Capital Sys., Inc. v. D.E. Shaw

Laminar Portfolios, L.L.C.*, 355 F. App'x 516, 519 (2d Cir. 2009) (holding that equitable claims,

seeking "recovery under a theory of unjust enrichment, are precluded by the existence of an

express written agreement governing the subject matter at issue"); *EBC I, Inc. v. Goldman, Sachs

& Co.*, 832 N.E.2d 26, 33-34 (N.Y. 2005) (holding that "the existence of a valid contract

governing the subject matter" of a dispute precludes an unjust enrichment claim "arising out of

the same subject matter"); *Parrott v. Logos Capital Mgmt., LLC*, 936 N.Y.S.2d 194, 195 (N.Y.

App. Div. 1st Dep't 2012) (holding that trial court "properly dismissed plaintiffs' claims for

conversion and unjust enrichment" in light of a "valid, written contract governing the subject

matter") (citing *Adelaide Prods., Inc. v. BKN Int'l AG*, 834 N.Y.S.2d 3, 4 (N.Y. App. Div. 1st

Dep't 2007)).[3]

---

[3]   New York law applies to Plaintiff's claims because it is the jurisdiction with "the greatest interest in adjudicating the issues raised in the litigation."  *LuxSoma LLC v. Leg Res., Inc.*, 289 F. Supp. 3d 514, 522 (S.D.N.Y. 2018).  MLIC is incorporated and has a principle place of business in New York; and the pertinent

Plaintiff's claims are expressly premised on the fact that a GAC is a valid contract that governs Plaintiff's annuity benefit.  Plaintiff alleges, for example, that "GACs are a type of contract . . . which guarantees benefits to the employees covered under the contract," and that Plaintiff "was the beneficiary of a [ ] GAC" pursuant to which "MetLife was responsible for paying certain annuity benefits to [him] upon his retirement in 1999."  (AC ¶¶ 1, 76.)  In a section of the Amended Complaint entitled "MetLife's Obligations under the GACs," Plaintiff alleges that "MetLife was responsible for . . . implementing protocols, processes, and procedures for identifying and locating them, and paying their benefits," and that "[g]enerally, the initiation of payment of benefits pursuant to the GACs were tied to Annuitants' birthdays at the age of 65, unless MetLife was notified that the Annuitant had opted for an early or late retirement."  (AC ¶¶ 45-47.)  Plaintiff goes on to allege that "MetLife" breached those obligations by failing to make timely payments "pursuant to" the GACs.  (AC ¶¶ 23, 42, 82, 83.)

Those allegations are rooted in contract law and cannot give rise to a claim for unjust enrichment, regardless of how Plaintiff seeks to frame them.  *See Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*, 52 F. Supp. 3d 601, 620-21 (S.D.N.Y. 2014) (dismissing unjust enrichment claim, stating that "because the [reinsurance agreement] governs whether and under what circumstances [defendant] is entitled to payment, it appears rather obvious that the [agreement] governs the subject matter of this unjust enrichment claim"); *see also id.* (finding that framing the claim as the "*retention* of the reinsurance proceeds" is "mere wordplay") (emphasis in original).  Nor can Plaintiff avoid the contractual nature of his claims by reciting language sounding in tort and equity:  the substance of the factual allegations determines whether the contract governs, not how Plaintiff chooses to label his claims.  *See Batson v. RIM San Antonio Acquisition, LLC*, No. 15

_____

conduct is alleged to have occurred in New York.  (AC ¶¶ 25, 28, 31.)  *See, e.g., LuxSoma LLC*, 289 F. Supp. 3d at 522 (applying New York law where New York is the jurisdiction where defendant is incorporated and has a principal place of business and where the events giving rise to the action occurred).

Civ. 7576, 2018 WL 1581675, at *10 (S.D.N.Y. Mar. 27, 2018) (holding that "where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory"); *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 556 N.E.2d 1093, 1096 (N.Y. 1990) (holding that labels employed by plaintiff are not dispositive, stating that "[t]here is no founded reason why liability should depend on such semantics").

This principle applies with equal force where a plaintiff does not, or cannot, assert a meritorious breach of contract claim.  *See Mariah Re Ltd.*, 52 F. Supp. 3d at 620 (holding that contract foreclosed claims for unjust enrichment, notwithstanding plaintiff's failure to plead breach of contract claim); *Nasso v. Bio Reference Labs., Inc.*, 892 F. Supp. 439, 454 (E.D.N.Y. 2012) (dismissing conversion claim that "merely recasts" a defective contract claim); *EBC I*, 832 N.E.2d at 33-34 (affirming dismissal of unjust enrichment claim because the subject matter was grounded in contract and affirming dismissal of contract claim).

It makes no difference that Plaintiff alleges he is a beneficiary of a GAC, rather than a party to a GAC, as there is no question that the annuity benefits at issue are contractual in nature. "Numerous decisions applying New York law have held that an unjust enrichment claim is barred 'if there is a valid contract governing the subject matter of the dispute, *even if one of the parties to the claim is not a party to that contract*.'"  *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016) (quoting *Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 312 (S.D.N.Y. 2015)) (emphasis in original) (citing cases); *see also Encore Lake Grove Homeowners Ass'n, Inc. v. Cashin Assocs., P.C.*, 976 N.Y.S.2d 143, 146 (N.Y. App. Div. 2nd Dep't 2013) (affirming dismissal of tort claim asserted by "third-party beneficiaries" to a contract, seeking enforcement of contractual obligations).

As the New York Court of Appeals has made clear, a claim for unjust enrichment "is not a catchall cause of action to be used when others fail" and "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

### B.   The Restitution and Accounting Claims Should Be Dismissed.

The same principle precludes Plaintiff from seeking equitable remedies such as restitution and accounting.  "[W]here a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists," and a claim for equitable relief should be dismissed.  *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004); *see also Poplar Lane Farm*, 449 F. App'x at 59 n.1 (holding that appellants cannot "assert a claim in equity, as their complaint seeks damages, and they have failed to show that they have no adequate remedy at law") (internal quotation omitted); *AGF York 57 L.P. v. Glikman*, 897 N.Y.S.2d 668 (N.Y. Sup. Ct. 2009) ("The legal principles of restitution and unjust enrichment are based upon quasi contract. . . .  Here, the parties had an agreement and there is no need to turn to equitable principles applicable to quasi contracts.").  This rule applies even if the action at law is (or would be) defective.  *See SmartStream Techs., Inc. v. Chambadal*, No. 17 Civ. 2459, 2018 WL 1870488, at *7 (S.D.N.Y. Apr. 16, 2018) (dismissing both defective contract claim and accounting claim).[4]

### III.   PLAINTIFF'S ACCOUNTING CLAIM SHOULD BE DISMISSED BECAUSE THERE IS NO CONFIDENTIAL OR FIDUCIARY RELATIONSHIP.

Plaintiff's accounting claim should be dismissed for the additional reason that he does not plead a confidential or fiduciary relationship.  "Under New York law, an accounting is an

---

[4]   Plaintiff's restitution claim also should be dismissed because, under New York law, it is "the remedy for unjust enrichment, not a separate basis for liability."  *See State of N.Y. v. SCA Servs., Inc.*, 761 F. Supp. 14, 15 (S.D.N.Y. 1991).

equitable remedy, 'premised upon the existence of a fiduciary relationship.'" *Estate of Calderwood v. ACE Grp. Int'l LLC*, 157 A.D.3d 190, 199 (N.Y. App. Div. 1st Dep't 2017) (quoting *Castellotti v. Free*, 138 A.D.3d 198, 210 (N. Y. App. Div. 1st Dep't 2016)) (affirming dismissal of accounting claim for lack of a confidential or fiduciary relationship); *see also Weinstein v. Natalie Weinstein Design Assocs., Inc.*, 928 N.Y.S.2d 305, 308-09 (N.Y. App. Div. 2nd Dep't 2011) (same).

Plaintiff's conclusory assertion of a "confidential and fiduciary relationship" (AC ¶ 89) is contrary to established New York law, under which the relationship between insurer and insured is strictly contractual in nature. "As a general rule, insurance companies do not owe their policyholders a fiduciary duty under New York law, a principle that goes back over a century." *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010); *see also Phillips v. Am. Int'l Grp., Inc.*, 498 F. Supp. 690, 695-96 (S.D.N.Y. 2007) (finding no confidential or fiduciary relationship between insurer and annuitant); *Rochester Radiology Assocs., P.C. v. Aetna Life Ins. Co.*, 616 F. Supp. 985, 988-89 (W.D.N.Y. 1985) (same). Plaintiff offers no facts demonstrating a fiduciary relationship, relying instead on allegations that "MetLife was in a position of trust with the Beneficiaries, as it held money for their benefit, was responsible for calculating the specific amount of money due to them, and was responsible for communicating with Beneficiaries about the existence of their benefits as well as the amount." (AC ¶ 89.) Those allegations "merely recite[] factors that are generally present in insurance contracts," and therefore Plaintiff has "not alleged any facts suggesting that the relationship . . . was anything other than arm's-length." *Phillips*, 498 F. Supp. 2d at 696.

IV.     **PLAINTIFF CANNOT PURSUE A CLASS ACTION BECAUSE HE FAILS TO STATE AN INDIVIDUAL CLAIM AND HIS CLAIMS ARE TIME BARRED.**

The Complaint should be dismissed because the named plaintiff fails to state a claim and his claims are time barred.  "Courts in this circuit have repeatedly held that, '[i]n order to maintain a class action, Plaintiffs must first establish that they have a valid claim . . . .  If the *named* plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.'" *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 122 (S.D.N.Y. 2002) (quoting *Goldberger v. Bear, Stearns & Co.*, No. 98 Civ. 8677, 2000 WL 1886605, at *1 (S.D.N.Y. Dec. 28, 2000)) (emphasis in original).

### A.     Plaintiff Received His Annuity Benefit and Fails to Plead Any Entitlement to Interest Payments.

Plaintiff's three claims are all premised on the same basic allegations – *i.e.*, that MLIC failed to pay benefits due under a GAC.  (AC ¶¶ 3, 5.)  But Plaintiff does not allege facts indicating that the alleged conduct occurred with respect to his own annuity benefit.

Unlike the annuitants with whom MLIC lost contact – and who are the subject of all of the SEC filings, press releases and news articles discussed at length in the Amended Complaint – Plaintiff received a letter from MLIC, responded to the letter, provided MLIC with necessary information and then promptly received payment.  Although Plaintiff alleges that he retired early, in his mid-fifties, in 1999, he acknowledges that payment is based on age absent notification of early retirement and does not allege that anyone provided MLIC with such notification.  (*Id.* ¶¶ 47, 76.)  Instead, Plaintiff alleges that MLIC sent a letter to him in October 2012, as he was approaching age 70½, advising Plaintiff that he might be eligible for a retirement benefit under a GAC and asking him to call MLIC, which he did.  (*Id.* ¶ 78; Greenfield Decl. Ex. C.)  Plaintiff then completed a Benefit Election form, agreeing to a lump

sum payment under the "Cash Settlement" option, which expressly states: "No other benefits will be payable to you under the contract." (Greenfield Decl. Ex. D.) MLIC then promptly paid him the cash settlement value of his annuity, less income tax withholding. (AC ¶ 79.) Although Plaintiff now alleges – five years after receiving the lump sum payment that he agreed to – that he "has still not received all of the retirement benefits that he is due" (*Id.* ¶ 80), Plaintiff cites no contract provision and alleges no other facts indicating that he is owed any additional benefits.

Nor has Plaintiff identified – in a contract or otherwise – any basis to conclude that he is owed interest payments. Plaintiff's citation to *Metropolitan Life Insurance Co. v. Office of State Comptroller*, 508 N.Y.S.2d 307 (N.Y. App. Div. 3rd Dep't 1986), is misplaced. (AC ¶ 103.) That case discusses a provision of the New York Insurance Law governing the computation of interest on death benefits – not annuity payments under a GAC – in the event that an insurer does not promptly pay in response to a death claim. *See* N.Y. Ins. Law § 3214(c) (stating that interest "shall be computed daily . . . from the date of the death of an insured or annuitant *in connection with a death claim* on such a policy of life insurance or contract of annuity . . . to the date of payment") (emphasis added); *Hanna v. Prudential Ins. Co. of Am.*, No. 05-cv-25732, 2005 WL 1755186, at *4 (E.D.N.Y. July 26, 2005) (finding Section 3214 "inapplicable" because the benefits at issue "were not owed when the insured died").

Because Plaintiff has no valid claim, the Amended Complaint should be dismissed.

### B.    The Named Plaintiff's Claims Are Time Barred.

All three of Plaintiff's claims should be dismissed because they are time barred. Although statute of limitations is an affirmative defense, it "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6)" where, as here, "the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

Plaintiff's claims accrued in April 1999 – almost 20 years ago – and are time barred. Claims for unjust enrichment and its remedy, restitution, accrue "upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013). Similarly, an accounting claim "accrues at the time the duty to pay arises." *Bezuszka v. L.A. Models, Inc.*, No. 04 Civ. 7703, 2006 WL 770526, at *20 (S.D.N.Y. Mar. 24, 2006).  According to Plaintiff's allegations, the wrongful acts giving rise to a duty of restitution occurred in April 1999, when Plaintiff allegedly "became entitled to his annuity benefits" and MLIC "denied Plaintiff's right to those annuity benefits."  (AC ¶ 77; *see also id.* ¶ 78 (alleging that MLIC "wrongly t[ook] possession and ownership over his funds" in 1999), ¶ 79 (alleging that MLIC "had converted his annuity benefit to its own use" in 1999).)

Even if January 14, 2013, the date MLIC paid Plaintiff his annuity benefit, were used as the date of accrual, Plaintiff's claims still would be time barred because they are subject to the three-year limitations period applicable to claims for conversion.  "In applying the Statute of Limitations, courts must look to the essence of the claim, and not to the form in which it is pleaded." *Kapernekas v. Brandhorst*, 638 F. Supp. 2d 426, 428 (S.D.N.Y. 2009).  Where, as here, the equitable claims "boil down to an allegation that defendant converted the [property] for [its] own benefit," Plaintiff "cannot avoid the three-year statute of limitations." *Id.* at 428-29; *see also Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 394 (S.D.N.Y. 2010) (applying three-year period to fraud claim; holding that "plaintiff cannot avoid the shorter statute of limitations"  where "the real substance of the claim is conversion"); *Samuels v. Greenberg*, No. 14-cv-4401, 2015 WL 5657565, at *8 (E.D.N.Y. Sept. 23, 2015) (applying

14

three-year period to breach of fiduciary duty claim that "actually sounds in conversion . . . notwithstanding the label they have attached to their claim").

Although Plaintiff eliminated the conversion claim he had asserted in the prior compliant, his equitable claims are still based on the core allegation that "Plaintiff became entitled to his annuity benefits" and MLIC "held, exercised dominion over, and denied Plaintiff's right to those annuity benefits." (AC ¶ 77.)  *See Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006) ("Two key elements of conversion are (1) *plaintiff's possessory right* or interest in the property and (2) *defendant's dominion over the property* or interference with it, in derogation of plaintiff's rights.") (internal citations omitted) (emphasis added).  Indeed, the Amended Complaint expressly refers to conversion more than a dozen times.  (AC ¶¶ 3, 4, 12, 13, 47, 50, 57, 63, 79, 92, 97.)  Plaintiff cannot circumvent the three-year limitations period simply by removing his conversion claim, but keeping its substance under the guise of unjust enrichment.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint.

Dated:   New York, New York
         October 5, 2018              DEBEVOISE & PLIMPTON LLP

                                      By : /s/ Maeve O'Connor_____
                                      Maeve O'Connor (*moconnor@debevoise.com*)
                                      Elliot Greenfield (*egreenfield@debevoise.com*)
                                      Rachel A. Shanies (*rashanies@debevoise.com*)

                                      919 Third Avenue
                                      New York, New York 10022
                                      Tel: (212) 909-6000
                                      Fax: (212) 909-6836

                                      *Attorneys for Defendants MetLife, Inc. and Metropolitan Life Insurance Company*