USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/15/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

EDWARD ROYCROFT, individually and on behalf of those similarly situated,

                              Plaintiff,

    -against-

METLIFE, INC., and METROPOLITAN LIFE INSURANCE COMPANY,

                              Defendants.

---------------------------------------------------------------- X

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

18-cv-5481 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Edward Roycroft ("plaintiff") brings this action against defendants MetLife, Inc. and Metropolitan Life Insurance Company ("defendants") to recover interest allegedly owed plaintiff because of a delay by defendants in paying plaintiff's retirement benefits. This case follows acknowledged failures by defendants to contact individuals who were eligible for retirement benefits under financial annuity products known as group annuity contracts ("GACs"). Many GAC beneficiaries are still owed benefits. The complaint alleges that defendants derived profits from and were unjustly enriched by the retention of assets owed to these beneficiaries.

        Plaintiff is not one of the beneficiaries for whom defendants' administration and efforts to contact were inadequate. He was contacted by defendants, responded to the letter he received, and, in 2012, received a cash payment in settlement of his benefits. Plaintiff acknowledges this payment, but he alleges that he should have been paid years earlier, when he retired from his job. In addition to seeking interest derived from the profit defendants allegedly

gained through the payment delay, plaintiff asserts that he is owed an explanation of how his benefits were calculated.

Plaintiff does not seek damages under a contract theory. Instead, plaintiff is seeking restitution (Compl. ¶¶ 102–04), unjust enrichment (Compl. ¶ 105–06), and an accounting with respect to funds allegedly owed (Compl. ¶¶ 107–110). Plaintiff also seeks to certify a class of similarly situated individuals. Compl. ¶¶ 93–101.

Before the Court is defendants' motion to dismiss. ECF 24. For the reasons that follow, defendants' motion is granted.

## Background

### A. Parties

Plaintiff Edward Roycroft is a New Jersey resident. Compl. ¶ 23. Plaintiff was an annuitant under a MetLife Group Annuity Contract. *Id.*

Defendant MetLife, Inc. is a Delaware corporation and a publically traded company. Compl. ¶ 24. MetLife, Inc. is the holding company of defendant Metropolitan Life Insurance Company ("MLIC"). MLIC is a New York corporation and a provider of annuities.

### B. Procedural History

Plaintiff filed this action on June 19, 2018. ECF 6. On September 21, 2018, plaintiff filed an amended complaint ("Compl."). ECF 23. On October 5, 2018, defendants filed a motion to dismiss. ECF 24.

### C. Factual Summary

The following facts are taken largely from plaintiff's complaint, which I must "accept[] as true" for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This case concerns beneficiaries of group annuity contracts (GACs), which are contracts issued by an insurance company to an employee retirement plan. Compl. ¶ 1. According to the complaint, GACs guarantee benefits to employees under the contract for life or for a set period of time. *Id.* The complaint alleges that GACs enable companies to transfer risk and provide for employees' retirement benefits. *Id.* According to the complaint, a GAC provider assumes complete responsibility for both paying benefits to retirees, including administrative management. Compl. ¶ 33.

The complaint alleges that, under the GACs, defendants were responsible for maintaining identification and location information for beneficiaries. Compl. ¶ 45. Plaintiff alleges that payments were generally tied to beneficiaries' birthdays at age 65, unless the beneficiary notified defendants that he or she had opted for an early retirement. Compl. ¶ 47.

1.  <u>MetLife's Failure to Identify GAC Beneficiaries</u>

The complaint alleges that for 25 years, the company has failed to track and contact beneficiaries. Compl. ¶ 5. As many as 30,000 beneficiaries are owed as much as $500 million in annuity benefits. *Id.*

The complaint alleges that defendants had adopted the policy of sending beneficiaries only two letters, one at age 65 and one at age 70 and one-half years, informing them that they may be entitled to benefits. Compl. ¶ 5. The letters were sent to beneficiaries' last known addresses.

If the beneficiary failed to respond to the letters, defendants did not engage in any additional follow-up. The complaint alleges that if annuity benefits went unclaimed, defendants presumed the beneficiary dead without checking public files and without contacting designated secondary beneficiaries. Compl. ¶ 49.

3

When contacted by beneficiaries, defendants allegedly sent settlement forms which provided no explanation of the benefits owed, did not provide for accrued interest, and "represented a fraction of what was owed." Compl. ¶ 6. The complaint further alleges that the letters sent to beneficiaries were generic and could be confused with junk mail, diminishing the likelihood that beneficiaries would respond. Compl. ¶ 20.

Defendants have begun to undertake remedial measures, including hiring third party firms that specialize in locating missing beneficiaries. Compl. ¶ 11. The complaint alleges that defendants' deficiencies in locating beneficiaries were "features[,] not bugs" of their administration of the GACs. Compl. ¶ 3. Plaintiff alleges that, as a result of failures to locate beneficiaries, defendants were able to "convert annuity benefits for [their] own use and profit." *Id.* The complaint alleges that defendants have failed to pay interest owed on benefits. Compl. ¶ 3.

### 2. The Individual Plaintiff's Claim

According to the complaint, plaintiff worked for Martindale-Hubbell from March 1970 to March 1999 and was a beneficiary of a MetLife GAC. Compl. ¶ 76. The complaint alleges that defendants were "responsible for paying certain annuity benefits to [plaintiff] upon his retirement in 1999." *Id.* The complaint does *not* allege that plaintiff or his employer contacted defendants to notify them of plaintiff's early retirement, as required under the GAC. Compl. ¶ 47. The complaint alleges that plaintiff was unaware that he was owed benefits. Compl. ¶ 76.

In 2012, plaintiff alleges that he called defendants to inquire about benefits, and that defendants responded by letter. Compl. ¶ 78. The complaint alleges that on January 14, 2013, defendants issued plaintiff a check for $2,508.36 as a "lump sum payment in lieu of

monthly annuity," which reflected a 20% federal income tax withholding from the "cash settlement value" of $3,135.46. Compl. ¶ 79. The "cash settlement" election form advised, "You will receive a one-time payment. No other benefits will be payable to you under the contract." Greenfield Decl., Ex. D, ECF 26-4, at 7. Plaintiff alleges that the check did not contain any accrued interest. *Id.* Plaintiff deposited the check. *Id.*

Plaintiff seeks interest and other equitable relief under an unjust enrichment theory, based on the failure of defendants to timely pay the annuity benefits owed to plaintiff and similarly situated retirees. Compl. ¶ 8. Plaintiff does not seek interest under a breach-of-contract theory. It seeks an accounting of the delayed annuity benefits and of the profits defendants derived from the delay of payment. Compl. ¶ 9. The complaint also seeks a court-supervised plan to provide expedited notice to beneficiaries. *Id.*

## Discussion

### A. The Dispute Is a Contractual Dispute and Cannot Be the Basis for an Unjust Enrichment Claim

"Under New York law, a plaintiff asserting a claim of unjust enrichment[1] must show that the defendant was enriched at the plaintiff's expense and that equity and good

---

[1] Plaintiff's separate restitution claim is dismissed. "[R]estitution is the *remedy* for unjust enrichment, not a separate basis for liability." *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, No. 11-cv-8196 (CM), 2014 WL 4401275, at *11 (S.D.N.Y. Sept. 4, 2014) (quoting *State of N.Y. v. SCA Servs., Inc.*, 761 F.Supp. 14, 15 (S.D.N.Y. 1991) (emphasis added)). As a result, "a plaintiff who establishes a prima facie case of unjust enrichment is entitled to the equitable remedy of restitution." *Id.*

conscience require the plaintiff to recover the enrichment from the defendant." ). *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009) (citing *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 203 n.8 (2d Cir. 2004)); *see also U.S. ex rel. Kester v. Novartis Pharm. Corp.*, No. 11-cv-8196 (CM), 2014 WL 4401275, at *11 (S.D.N.Y. Sept. 4, 2014) ("An unjust enrichment claim requires that plaintiff prove "(1) that the defendant was enriched, (2) at the plaintiff's expense, and (3) it would be inequitable for the defendant to retain the benefit.")

Defendants argue that plaintiff's unjust enrichment claim should be dismissed, because a valid contract, the GAC, governs the subject matter of the dispute and the parties' rights and obligations. "Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts, as well as unjust enrichment, implied and quasi contract, and quantum meruit, are generally precluded, unless based on a duty independent of the contract." *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011); *see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the *absence* of any agreement.") (emphasis added) (quoting *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572, 841 N.E.2d 742, 746 (2005)); *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

6

Plaintiff acknowledges that there was a contract, the GAC, and that he was a beneficiary of the contract. Instead, plaintiff makes two arguments in an attempt to distinguish its unjust enrichment claim from the contract. First, plaintiff argues that its claims fall outside the scope of the contract. Opp. at 7. Second, plaintiff takes the position that the remedy distinguishes the dispute's subject matter. According to plaintiff, its unjust enrichment claim seeks to recover the profit that defendants derived by retaining assets owed to the class. Plaintiff takes the position that because unjust enrichment is an equitable claim, and the remedy is distinct, it lies outside the scope of the contract. Plaintiff's arguments lack merit.

*Scope.* Plaintiff first argues that the GAC does not control the case, because plaintiff's employer, not plaintiff, was party to the contract. Plaintiff also argues that issues in this case were not covered by the GAC and lie outside its scope. These issues include defendants' obligations after failing to pay annuity benefits and defendants' alleged obligations to pay interest to beneficiaries.

To the extent that defendants came to possess the $500 million in capital, it did so pursuant to contracts, the GACs. Similarly, to the extent that defendants were deficient in meeting their obligations to track and compensate beneficiaries, they were deficient in their obligations under the GACs, that is, under the contracts. The existence of a contract was also consistent with the understanding of the plaintiff when he agreed to a "cash settlement" with defendants in satisfaction of defendants' obligations under the GAC. Letter, ECF 26-4. Defendants' paperwork explicitly referred to the relevant GAC covering plaintiff. Letter, ECF 26-4. Moreover, the letter and materials expressly contemplated and advised that "[n]o other benefits will be payable to you under the contract." Letter, ECF 26-4, at 3.

7

*Remedies.* Plaintiff also argues that differing remedies distinguish the claims. Again, this argument is unpersuasive. The differences in remedies between contractual and equitable claims are real, but this distinction is in no way responsive to the general rule that the existence of a contract precludes quasi-contractual claims. None of the cases cited by plaintiff supports the proposition that the differing remedies between contractual and unjust enrichment claims enables a distinct claim for unjust enrichment even in the context of a contract. Nor does plaintiff explain the seeming inconsistency of the many cases that hold that the existence of a contract precludes equitable claims despite the different remedies available. *See, e.g., Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572, 841 N.E.2d 742, 746 (2005); *see also Poplar Lane Farm*, 449 F. App'x at 59 (finding claims arising from dispute to be contractual where a valid agreement governs the dispute's subject matter and rejecting "attempts to repackage" claims in fraud, conversion, or unjust enrichment).

*Alternative Pleading.* Plaintiff cites authority for the proposition that a plaintiff can assert both contractual and unjust enrichment claims at the pleading stage. The general rule that a *valid* agreement governing the subject matter of a dispute precludes unjust enrichment claims "does not apply[,] 'where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue.'" *Poplar Lane Farm*, 449 F. App'x at 59. Put another way, courts allow pleading in the alternative, a hypothetical in which there is no contract or the subject matter of the controversy lies outside the contract's scope.

This case contains no such controversy. Here, plaintiff does not dispute the existence of the contract and cannot effectively argue that the subject matter, that is, the taking in of premiums and the paying out of benefits, lies outside the contract. *Cf. Am. Tel. & Util. Consultants, Inc. v. Beth Israel Med. Ctr.*, 307 A.D.2d 834, 835, 763 N.Y.S.2d 466 (2003)

8

([W]here there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, plaintiff may proceed upon a theory of quantum meruit.").

For these reasons, plaintiff's unjust enrichment and restitution claims are dismissed.

### B. Plaintiff's Accounting Claim and the Fiduciary Relationship

Both parties acknowledge that "the right to an accounting is premised upon the breach of a confidential or fiduciary relationship with respect to property in which the plaintiff has an interest." *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 436 (S.D.N.Y. 1998). "[A] fiduciary relationship 'exists only when a person reposes a high level of confidence and reliance in another.'" *Muller-Paisner v. TIAA*, 528 F. App'x 37, 39 (2d Cir. 2013).

Under this definition, plaintiff has not plausibly alleged that a fiduciary duty existed. Plaintiff, as a third party beneficiary to the GAC, placed no trust or confidence in defendants or their expertise. In fact, plaintiff alleges that he was *unaware* that he was owed retirement benefits by defendants. Further, unlike *Muller-Paisner v. TIAA*, defendants made no specific statements to induce trust or reliance by plaintiff. 528 F. App'x 39.

Under New York law, the general rule is that "the relationship between the parties to a contract of insurance is strictly contractual in nature" and that "no special relationship of trust or confidence arises out of an insurance contract between the insured and the insurer; the relationship is legal rather than equitable." *Batas v. Prudential Ins. Co. of Am.*, 281 A.D.2d 260, 264, 724 N.Y.S.2d 3, 7 (N.Y. App. Div. 1st Dep't 2001).

"New York courts do not follow a per se rule prohibiting the recognition of a fiduciary relationship in the insurance context," but a plaintiff still must allege facts indicating a "relationship closer than arm's-length." *Phillips v. Am. Int'l Grp., Inc.*, 498 F. Supp. 2d 690,

9

695–96 (S.D.N.Y. 2007) (quoting *Dornberger v. Metropolitan Life Ins. Co.*, 961 F. Supp. 506, 546 (S.D.N.Y. 1997)). Plaintiff's references to defendants' responsibilities as insurer and to defendants' purported annuities expertise are unavailing. In *Phillips v. Am. Int'l Grp., Inc.*, Judge Rakoff concluded on a Fed. R. Civ. P. 12(b)(6) motion that plaintiff's conclusory allegations about defendants' apparent expertise in annuities were insufficient to create a fiduciary relationship between the plaintiff annuitant and insurer. 498 F. Supp. 2d at 696.

### C.  MetLife, Inc.'s Liability

Plaintiff has also failed to state a claim against MLIC's corporate parent, MetLife, Inc. Broadly construed, plaintiff's allegations present three possible theories for MetLife's liability as corporate parent: 1) direct liability theory grounded in MetLife, Inc.'s participation in administering the GACs, 2) an alter ego or corporate veil-piercing theory, and 3) an agency theory, construing MLIC as MetLife, Inc.'s agent. *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 194 (2d Cir. 2010), *aff'd*, 569 U.S. 108 (2013).

*Direct liability Theory*. Plaintiff alleges that both MetLife, Inc. and MLIC were responsible for the failure to track and pay beneficiaries. Defendants take the position that plaintiff has not plausibly alleged a claim against MetLife, Inc., because MLIC, its subsidiary, offered and administered the GAC at issue in the case, not MetLife, Inc.

Plaintiff relies on MetLife, Inc.'s December 15, 2017 Form 8-K, which states that "'MetLife,' the 'Company,' 'we,' 'our' and 'us' refer to MetLife, Inc., a Delaware corporation incorporated in 1999, its subsidiaries and affiliates." Greenfield Decl. Ex. A, ECF 17-1, at 5. The Form 8-K also explains that "we are improving the process used to locate a small subset of our total group annuitant population" and that "[w]e are making our process more robust to include a wider set of search techniques." *Id.* Defendants interpret these statements to refer only

10

to MLIC. Defendants' specific arguments on the language of the Form 8-K and the call are not particularly persuasive. The Form 8-K is a filing on issues of securities, reporting on a consolidated basis. Defendants' reports in the Form 8-K of ameliorative activity ("we are improving," "we are making our process more robust") are, however, hardly tantamount to admissions of "direct participation in [violative] conduct," as plaintiff proposes. *Moses v. Citicorp Mortg., Inc.*, 982 F. Supp. 897, 903 (E.D.N.Y. 1997).

Defendants cite authority for the proposition that "[l]iability is never imposed solely upon the fact that a parent owns a controlling interest in the shares of a subsidiary." *Wiseman v. ING Groep, N.V.*, No. 16-cv-07587 (AJN), 2017 WL 4712417, at *12 (S.D.N.Y. Sept. 28, 2017); *see also Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 194 (2d Cir. 2010), *aff'd*, 569 U.S. 108 (2013) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.") (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).

Plaintiff also argues that liability is established because the letter sent to plaintiff contained the MetLife logo. It is established law that a corporate parent cannot be liable for a subsidiary corporations' acts "merely because the two used the same brand name or even 'collaborated on certain aspects of a transaction.'" *Wiseman v. ING Groep, N.V.*, 2017 WL 4712417, at *12. For these reasons, plaintiff's references to a single MetLife brand and the MetLife logo on the letter sent plaintiff are unpersuasive.

*Alter Ego Theory.* Plaintiff's claims for liability similarly fail under an alter ego theory. Plaintiff does not allege fraud, nor do plaintiff's allegations support the inference of "complete domination" of MLIC by MetLife, Inc. that would render the subsidiary a "mere alter ego." "[A] parent company can be held liable if the subsidiary company is a mere alter ego of

11

the parent. *Wiseman v. ING Groep, N.V.*, No. 16-cv-07587 (AJN), 2017 WL 4712417, at *12 (S.D.N.Y. Sept. 28, 2017) ("To make out such a claim, the plaintiff must demonstrate that '(1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or 'other wrong'; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff.'"). In the absence of fraud allegations, an alter ego theory necessarily fails.

*Agency Theory.* Nor does the plaintiff allege facts suggesting that MLIC and MetLife, Inc. had an agency relationship. According to the Restatement (Second) of Agency § 1, agency is defined as "the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." "Ordinarily, subsidiary corporations are not deemed to be the agents of their corporate parents." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d at 194 (observing the *absence* of any allegation of an agreement establishing an agency relationship). Nor can the cited statements by MetLife, Inc. create the inference of ratification or establish an agency relationship. *See id.* ("The allegations that [the parent] approved certain conduct undertaken by [the subsidiary] does not show an agency relationship.").

Plaintiff's cited authority is of no assistance. For example, in finding liability for the corporate parent, courts have pointed to disclosures showing "[a]ll of our banking subsidiaries are under common control of [parent]," as well as allegations of common management and linked financial reporting. *Cassese v. Washington Mut., Inc.*, 262 F.R.D. 179, 185 (E.D.N.Y. 2009). These indicia are lacking here.

As a result, I conclude that plaintiffs have also failed to state a claim against MetLife, Inc.

## Conclusion

For the reasons stated herein, plaintiff fails to state a claim against either MLIC or MetLife, Inc. Defendants' motion to dismiss is granted. Oral argument scheduled for January 22, 2019 is unnecessary and is cancelled. The clerk shall terminate the motions (ECF 15, 24), enter judgment for defendants, and close the case.

SO ORDERED.

Dated: January __, 2019
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge